UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
VEECO INSTRUMENTS INC.,

                Plaintiff,

      - against -

SGL CARBON, LLC, and SGL GROUP SE,

                Defendants.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
No. 17-CV-2217 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Veeco Instruments Inc. ("Veeco") brings this action against Defendants SGL Carbon, LLC ("SGL Carbon") and SGL Group SE ("SGL Group") (collectively, "SGL"), seeking damages and injunctive relief for SGL's alleged infringement of Veeco patents in violation of the Patent Act, 35 U.S.C. § 271.  On November 2, 2017, the Court issued a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, 35 U.S.C. § 283, and 35 U.S.C. § 271(f)(2), prohibiting Defendant SGL Carbon from supplying certain components of an infringing assembly to third-party purchasers.  (*See* Dkt. 65 ("PI Order").)[1]  SGL Carbon filed an interlocutory appeal from the PI Order, and that appeal is pending before the Federal Circuit.  Before the Court is SGL Carbon's motion to stay the PI Order pending a ruling by the Federal Circuit on SGL Carbon's appeal.  In the alternative, SGL Carbon asks the Court to stay the PI Order long enough for SGL Carbon to ask the Federal Circuit to stay the preliminary injunction during the pendency of the appeal.  Finally, assuming the Court does not stay the preliminary injunction, SGL Carbon asks the Court to order Veeco to post a security bond of $32 million.

---

[1] The Westlaw citation for the PI Order is *Veeco Instruments Inc. v. SGL Carbon, LLC*, 2017 WL 5054711 (E.D.N.Y. Nov. 2, 2017).

The Court heard oral argument on SGL Carbon's stay motion on November 14, 2017.  At the conclusion of that hearing, the Court denied SGL Carbon's motion to stay the injunction and ordered Veeco to post a security bond of $7.5 million.  The Court also indicated that it would issue this written memorandum and order setting forth the legal authorities for its ruling from the bench.[2]

## DISCUSSION

### I.      SGL Carbon's Motion to Stay

Under Federal Rule of Civil Procedure 62(c), the factors regulating the issuance of a stay are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

The factors governing the issuance of a stay pending appeal mirror the factors governing the issuance of a preliminary injunction.  Thus, in granting Veeco's motion for a preliminary injunction, the Court considered and addressed most of the arguments that SGL Carbon now asserts in support of its motion to stay the injunction pending appeal.  Accordingly, as noted herein, this Order largely incorporates the analysis set forth in the PI Order.  Nonetheless, the Court considers each of the elements of SGL Carbon's stay motion in turn.

### A.      Strong Likelihood of Success on the Merits

SGL Carbon asserts that it has a strong likelihood of success in obtaining reversal of the PI Order because the PI Order is erroneous for numerous reasons.  (SGL Br. at 7-19.)  The Court

---

[2] The Court assumes the parties' familiarity with the operative pleadings and relevant factual record, which were summarized in detail in the PI Order.  To the extent this Order uses capitalized terms that are not defined in this Order, those terms have the meanings assigned to them in the PI Order.

has considered each of these arguments and finds that SGL Carbon has not shown a strong likelihood of success on appeal.

      1.   Causal Nexus

SGL Carbon argues that the Court "misapplied the relevant legal standard in finding a causal nexus between SGL's alleged infringement and Veeco's alleged harm." (SGL Br. at 7.) SGL Carbon identifies three purported flaws in the Court's analysis of the causal nexus requirement.

First, SGL Carbon argues that "[t]he undisputed four-year lag between the start of the alleged infringement and the start of the alleged harm shows that any connection between the patented feature and customer demand is tenuous at best." (SGL Br. at 7-8.) SGL Carbon argues that this four-year lag "unambiguously shows that AMEC gained recent market success through improvements in its latest generation of MOCVD systems," and that "the increase in demand for AMEC's latest generation of MOCVD systems is clearly driven by factors unrelated to the infringing feature." (SGL Br. at 8.) As explained in the PI Order, the Court finds that this alleged "four-year lag" between infringement and irreparable harm does not undercut the finding of a causal nexus between SGL Carbon's infringement and Veeco's alleged harm. (PI Order at 66-67.) Although the four-year lag between infringement and irreparable harm demonstrates that factors other than the infringing wafer carriers had an impact on customer demand for AMEC's second-generation reactor, the lag does not indicate whether or not AMEC's second-generation reactor would have had the same level of success in 2017 as it did, or any market success at all, in the absence of the infringing component. That it took four years for AMEC to realize the benefits of the infringing wafer carrier in the sale of its MOCVD reactors does not negate the inference that the wafer carrier contributed to the marked increase in sales four years later. In short, the four-

year lag does not prove or disprove a connection between SGL Carbon's supply of wafer carriers and customer demand.

Second, SGL Carbon argues that the Court erred in resting its causal nexus finding, in part, on a finding that "MOCVD systems that have not incorporated the spindle-mounted design have been all but eliminated from the market in recent years." (SGL Br. at 9.)  SGL Carbon argues that, in finding significance in the market trend toward spindle-mounted systems, the Court confused causation with "correlation." (SGL Br. at 9.)  To some extent, SGL Carbon makes a fair point: the mere fact that MOCVD systems without a spindle-mounted design have lost market share in recent years does not prove that the spindle-mounted design is driving customer demand. Nonetheless, as one factor in assessing the causal nexus between the infringing assembly and Veeco's alleged harm, the inability of other manufacturers to compete without the design is supportive of the causal nexus.

Third, SGL Carbon argues that the Court erred in resting its causal nexus finding, in part, on the testimony of Veeco's Vice President of Marketing, Sudhakar Raman, that "spindle-mounted wafer carriers substantially increase the throughput of an MOCVD reactor, in some cases by up to 40%." (SGL Br. at 9.)  SGL Carbon argues that the Court erred in concluding that customers care about the spindle-mounted design because it significantly increases the throughput of an MOCVD reactor. (SGL Br. at 9-10.)  SGL Carbon asserts that this line of reasoning is contrary to the Federal Circuit's instruction that "evidence showing the importance of a general feature of the type covered by a patent is typically insufficient to establish a causal nexus."  (SGL Br. at 10 (citing *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1366 (Fed. Cir. 2013) ("*Apple III*")).)  The Court finds this argument unpersuasive.  In the portion of *Apple III* quoted by SGL Carbon, the Federal Circuit affirmed the district court's ruling that general evidence showing that customers care generally

4

about the "design" of a smartphone was insufficient to establish that a specific, patented element of the design of Apple's smartphones drove customer demand.  735 F.3d at 1365-66.  By contrast, in this case the link between the patented wafer-supporting assembly and customer demand is more specific and direct.  As explained in the PI Order, the undisputed evidence indicates both that (i) Veeco's patented wafer-supporting assembly increases wafer throughput, and (ii) purchasers of MOCVD systems make their purchasing decisions to achieve the "highest volume of high quality wafers manufactured over the longest time period and at the lowest price."  (PI Order at 65.)  In other words, the record before the Court clearly establishes that the wafer-supporting assembly drives wafer throughput, which in turn drives customer demand.  (*See* PI Order at 65, 68-69 n.71.)

Lastly, SGL Carbon contends that the Court committed clear error in finding that Veeco and AMEC "are the only two major competitors in the current MOCVD market."  (SGL Br. at 15.)  SGL Carbon asserts that the Court "ignor[ed]" industry predictions and market evidence suggesting that TOPEC "poses an equal level of threat to Veeco in the Chinese . . . MOCVD reactor market as AMEC."  (SGL Br. at 15.)  Not so.  In the PI Order, the Court acknowledged, based on the same industry analyses on which SGL Carbon relies, that "there is some evidence that TOPEC has become a slightly more significant competitor in the MOCVD market in 2017."  (PI Order at 23-24.)  Nonetheless, considering all of the evidence in the record, the Court found that TOPEC is not a major competitor in the market for 700mm MOCVD reactors at this time.  (PI Order at 23-24, 63-64, 67.)

Thus, the Court does not find any error in its finding, based on the present record, that Veeco is likely to establish the requisite causal nexus.

### 2.   Veeco's Alleged Delay

SGL Carbon argues that the Court "applie[d] the incorrect legal standard in its analysis of Veeco's delay in moving for a preliminary injunction."  (SGL Br. at 2.)  The Court disagrees.  The

governing legal standard is that a party's delay in seeking a preliminary injunction may be considered as one factor in evaluating its claim of irreparable harm. *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325-26 (Fed. Cir. 2012) ("[D]elay in bringing an infringement action and seeking a preliminary injunction are factors that could suggest that the patentee is not irreparably harmed by the infringement."). In the PI Order, the Court applied this legal standard by considering the timeline of events leading up to Veeco's decision to file its motion for a preliminary injunction, including the alleged "delay" that SGL Carbon flagged in its opposition to Veeco's motion, in connection with the Court's evaluation of the irreparable harm element of Veeco's PI motion. (PI Order at 60-73.) Contrary to SGL Carbon's suggestion, there is no bright-line rule requiring the Court to deny Veeco's motion for a preliminary injunction based upon the number of years or months that transpired between the start of SGL Carbon's infringement, the date on which Veeco learned of that infringement, or the date on which Veeco learned that it would be meaningfully affected by that infringement. As the Federal Circuit has explained, the failure to bring suit against potential infringers "may be relevant to an analysis of irreparable harm, but only when it indicates unreasonable delay in bringing suit, willingness to accept royalty-type damages in lieu of market exclusivity, or indifference in enforcing one's patent." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 976 (Fed. Cir. 1996). The Court's ruling that Veeco's alleged "delay" does not undercut its claim of irreparable harm is consistent with these legal standards.

### 3.   Alleged Invalidity of the '769 Patent

SGL Carbon argues that, "under a proper construction of 'susceptor,' Veeco's '769 patent cannot withstand SGL's invalidity challenge." (SGL Br. at 12.) SGL Carbon raised this very same argument in opposition to Veeco's PI motion, and the Court considered and rejected this argument in the PI Order. (PI Order at 45-46, 54-59.) SGL Carbon does not offer any additional facts or argument that would give the Court reason to reconsider its construction of the term "susceptor"

6

and its resulting finding that Veeco has shown a likelihood of success on the issue of validity.  (PI Order at 45-46, 54-59.)

### 4.   Extraterritoriality

SGL Carbon argues that the Court erred in holding that the presumption against extraterritoriality does not preclude Veeco from seeking equitable relief from SGL Carbon based on Veeco's anticipated loss of MOCVD reactor sales to purchasers outside the United States.  (SGL Br. at 12.)  In particular, SGL Carbon contends that the PI Order "directly contradicts" the Federal Circuit's opinion in *WesternGeco LLC v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. 2015).  (SGL Br. at 12.)  But, for the reasons explained in the PI Order, the Court finds that the specific facts of this case fall outside the holding of *WesternGeco*, and that the presumption against extraterritoriality is no bar to Veeco's recovery of lost profits or the Court's issuance of the preliminary injunction.  (PI Order at 70-73.)  Nothing in SGL Carbon's stay motion suggests that the Court should reconsider its ruling on this issue.

### 5.   Adequacy of Money Damages

With respect to irreparable harm, SGL Carbon also argues that the Court erred in finding that Veeco's alleged injuries from SGL Carbon's infringement are not likely to be quantifiable with a requisite degree of certainty.  (SGL Br. at 13-15.)  SGL Carbon does not identify any new facts or legal authorities that warrant the Court's reconsideration of its holding on this issue, which is explained in detail in the PI Order.  (PI Order at 62-64.)

### 6.   Properties of AMEC MOCVD Reactors

SGL Carbon argues that the Court committed clear error in "finding that AMEC MOCVD reactors meet all limitations of the asserted claims."  (SGL Br. at 16.)  The Court disagrees.  As a threshold matter, SGL Carbon misstates the Court's factual finding.  Contrary to SGL Carbon's assertion, the Court did not make a final and conclusive finding as to the properties of AMEC's

MOCVD reactors. Rather, the Court found, based on the record before it, that Veeco is likely to prove that AMEC's MOCVD reactors meet the limitations of Claims 1 and 22 of the '769 Patent, as those claims were construed in the PI Order.

Nonetheless, setting that distinction aside, SGL Carbon also misstates the factual basis on which the Court found that AMEC's MOCVD reactors likely meet the limitations of the asserted claims. SGL Carbon contends that the Court erred in considering AMEC's '768 Application in reaching this conclusion, because there is "no evidence on the record that AMEC's MOCVD reactors practice the '768 Application." (SGL Br. at 16.) The Court disagrees. Although neither party submitted direct evidence of whether AMEC's MOCVD reactors practice the spindle assembly disclosed in the '768 Application, the indirect evidence strongly suggests that they do. (*See* PI Order at 18-19.) The Court was within its discretion to consider all of the evidence in the record concerning AMEC's MOCVD reactors, including circumstantial evidence, and draw the inference that AMEC's MOCVD reactors practice the spindle assembly that AMEC disclosed in its '768 Application.[3]

Finally, SGL Carbon argues, in the alternative, that "[e]ven if AMEC CVD reactors practiced the '768 Application[,] . . . the '768 Application demonstrates that the supporting part *is* a susceptor under the Court's definition because it overlaps with the heater." (SGL Br. at 17.) In the PI Order, the Court construed the term "susceptor," within the meaning of the '769 Patent, as follows:

> A susceptor is permanently mounted in the reactor, typically on top of a spindle, and supports the wafer carrier of the reactor. The susceptor is large enough in diameter to extend above the heating apparatus of the reactor, thus creating two thermal interfaces—one between the susceptor

---

[3] The Court further notes that SGL Carbon has pointed to nothing in the record to support the contrary inference, *i.e.*, that AMEC's MOCVD reactors use a different wafer-supporting assembly than the one disclosed in the '768 Application.

and the heating apparatus (below the susceptor), and one between the susceptor and the wafer carrier. A susceptor is made of highly durable, heat transferring material, most typically a molybdenum alloy. A susceptor can be removed from the reactor only when the deposition cycle is interrupted, creates a significant thermal interface with the wafer carrier, and adds significant mass.

(PI Order at 46-47.) The Court then held that the "supporting part" disclosed in AMEC's '768 Application is not a "susceptor" within the meaning of the '769 Patent, but rather is a "retaining means" attached to a "spindle," thus "bringing [the AMEC supporting part] squarely within the scope of the '769 Patent." (PI Order at 56.)

With the benefit of SGL Carbon's additional briefing in support of its motion to stay, the Court recognizes that, indeed, the "supporting part" disclosed in the AMEC '768 Application meets many of the defining properties of a "susceptor" within the meaning of the '769 Patent. The supporting part contemplated by the '768 Application is permanently mounted in the reactor on top of a spindle and supports the wafer carrier of the reactor.[4] The supporting part, at least in some proposed embodiments, is large enough in diameter to extend beyond the diameter of the spindle and above the heating apparatus of the reactor, thus creating two thermal interfaces—one between the supporting part and the heating apparatus (below the supporting part), and one between the supporting part and the wafer carrier. (AMEC '768 Application at 8:5-16, 11:8-15, 11:19-28.)[5]

However, these facts do not alter the Court's conclusion that the supporting part disclosed in AMEC's '768 Application is not a susceptor as defined in the '769 Patent. As the Court emphasized during oral argument on SGL Carbon's stay motion, the "supporting part" disclosed

---

[4] The '768 Application uses the term "substrate carrier" instead of "wafer carrier."

[5] Other embodiments of the supporting part disclosed in the '768 Application do not extend horizontally outward beyond the circumference of the spindle. (AMEC '768 Application at 16:17-20; *see also id.* at ECF 29-33 (Figures 4A-5E).)

in the '768 Application likely does not have sufficient thermal inertia or mass to constitute a "susceptor" within the meaning of the '769 Patent.  (Hr'g Tr. 10:6-25, Nov. 14, 2017.)  Whereas the D-180 wagon wheel had a diameter of roughly four times the size of the spindle on which it was mounted (Glew Reply Decl., Dkt. 42-26, ¶ 50), the "supporting part" disclosed in the AMEC '768 Application appears to have, at most, a thirty percent greater diameter than the spindle to which it would be attached (*id.* ¶ 46).[6]  As the Court stated from the bench, one of the key improvements of the '769 Patent over prior art was that "the susceptor, the wagon wheel of old, if you will, occupied a much larger proportion, diameter-wise, of the area underneath the wafer carrier itself, which was one of the reasons that it needed to be improved upon, because of thermal inertia . . . and mass."  (Hr'g Tr. 10:6-12, Nov. 14, 2017.)  Even setting aside the embodiments of AMEC's '768 Application in which the supporting part has no additional thermal inertia or mass beyond that of the spindle (*see* AMEC '768 Application at ECF 29-33 (Figures 4A-5E)), which clearly would not meet the definition of a "susceptor," the Court finds, based on the full record before it, that the supporting part disclosed in the '768 Application does not have sufficient thermal inertia or mass to constitute a susceptor.  (Hr'g Tr. 10:17-25.)  Rather, the wafer-supporting assembly disclosed in AMEC's '768 Application is a spindle with a retaining means within the meaning of the '769 Patent.  (PI Order at 56.)

For these reasons, and those stated in the PI Order, the Court does not agree with SGL Carbon's assertion that the Court committed "clear error" in finding that Veeco is likely to succeed in proving that AMEC's MOCVD reactor meets the limitations of Claims 1 and 22 of Veeco's '769 Patent.  (*See* PI Order at 47-48.)

---

[6] In fact, in many embodiments of the supporting part, the "supporting part" is merely the topside of the spindle and does not extend horizontally outward beyond the circumference of the spindle.  (AMEC '768 Application at 16:17-20; *see also id.* at ECF 29-33 (Figures 4A-5E).)

7. <u>SGL Carbon's Knowledge and Intent</u>

SGL Carbon argues that "the Court erroneously found that SGL had the required knowledge and intent necessary to infringe under 35 U.S.C. § 271(f)(2)." (SGL Br. at 4; *see also id.* at 17-19.) SGL Carbon argues in two ways that, notwithstanding the Court's PI Order, SGL Carbon has a "good faith" belief of non-infringement that negates the knowledge and intent required for a Section 271(f)(2) violation.

First, SGL Carbon asserts that it holds a "good-faith belief of non-infringement" because, based on the Court's "application of the meaning of 'susceptor' in the [PI] Order, both the prior art D-180 reactor and the AMEC reactors have a 'susceptor.'" (SGL Reply Br., Dkt. 75-2, at 5; *see also* SGL Br. at 18.) In other words, although SGL Carbon maintains that it "has no knowledge regarding the actual design of AMEC reactors," assuming, as a hypothetical matter, that the AMEC reactors in question have the properties disclosed in AMEC's '768 Application, those reactors would nonetheless not meet the limitations of the '769 Patent because AMEC's '768 Application discloses a CVD reactor with a susceptor. (SGL Br. at 18; SGL Reply Br. at 5-6.) The problem with this argument, however, is that SGL Carbon's purported "good faith belief" is premised on its view that the Court misapplied its own construction of the term "susceptor" in the PI Order, which in insufficient to negate the Court's finding of knowledge and intent for purposes of § 271(f)(2). In the PI Order, the Court expressly considered whether the reactors disclosed in AMEC's '768 Application contain a susceptor as the Court construed that term, and the Court concluded that they do not. (PI Order at 56; *see also supra* (reaffirming that AMEC's '768 Application discloses a susceptorless CVD reactor).) Although SGL Carbon may disagree with the Court's ruling on that issue, it cannot defeat the knowledge and intent element under § 271(f)(2) merely by arguing that the Court's ruling is wrong.

Second, SGL Carbon contends that the Court erred in basing its finding of knowledge and intent in part on the complaint in this action and the Court's claim construction in the PI Order. (SGL Br. at 18-19; SGL Reply Br. at 7-8.)  SGL Carbon asserts that the Court's reliance on the filings in this action as evidence of SGL Carbon's knowledge and intent "effectively vitiates the requirement of showing actual evidence of knowledge and intent, where, as here, the plaintiff pleads a combination is covered by the patent and the Court agrees."  (SGL Br. at 18.)[7]  The Court disagrees with this interpretation of the PI Order.  Contrary to SGL Carbon's argument, the Court's determination of Veeco's likelihood of success on the knowledge and intent element under § 271(f)(2) rested on more than a mere finding that "the accused component would be combined abroad in an infringing manner if such a combination occurred within the United States."  (SGL Br. at 18.)  Rather, the Court's determination rested on the provisional findings that (i) the accused component would be combined abroad in an infringing manner if such a combination occurred within the United States, (ii) the accused component has no substantial non-infringing use, (iii) through the course of this litigation, SGL Carbon has been repeatedly put on notice by Veeco's complaint, witness declarations, and deposition testimony that the actual use, and the only practical use, for the accused component is an assembly that meets the limitations of the '769 Patent, and (iv) the PI Order put SGL Carbon on notice of the Court's construction of the relevant claims of the '769 Patent.  Based on *all* of these factors, the Court found that Veeco is likely to succeed in

---

[7] (*See also* SGL Reply Br. at 7-8 ("Under the Court's reasoning, a plaintiff automatically proves the requisite knowledge and intent by moving for a preliminary injunction and sufficiently showing a likelihood that the accused component would be combined abroad in an infringing manner if such a combination occurred within the United States.  This reasoning would permit courts to confer knowledge and intent on defendants any time a preliminary injunction order issues, regardless of whether the plaintiff met the burden to prove knowledge and intent in its preliminary injunction motion.").)

proving that SGL Carbon has the requisite knowledge and intent to support a claim under § 271(f)(2).  (PI Order at 52-53.)[8]

### B.      Irreparable Injury to SGL Carbon

SGL Carbon argues that, in the absence of a stay, the preliminary injunction will substantially and irreparably harm SGL Carbon's business.  In making this argument, SGL Carbon advances the same theories of hardship and irreparable harm that the Court considered in weighing the balance of hardships in the PI Order:  lost profits, damage to its build-to-print business, and damage to its reputation for integrity and reliability.  (*See* SGL Br. at 19-21; PI Order at 73-75.) SGL Carbon has also submitted an affidavit substantiating its claim of lost profits and bolstering its claim that it will forego investment due to the injunction.  (Dkt. 69-3.)  These arguments do not materially change the Court's assessment of the PI Order's hardship to SGL Carbon.  As the Court acknowledged in the PI Order, the harm to SGL Carbon from a wrongly granted preliminary injunction would be significant.  (PI Order at 73-75.)

---

[8] During oral argument, SGL Carbon pointed out a "curious" implication of the Court's determination of knowledge and intent based, in part, on its construction of the claim in the PI Order.  According to SGL Carbon, there was no infringement prior to the Court's entry of the PI Order because, before then, SGL Carbon maintained a good faith belief of non-infringement based on a construction of the claim that the Court rejected in the PI Order.  (Tr. 29-30.)  And, after entry of the PI Order, there was also no infringement because the PI Order prevented any such infringement by enjoining SGL Carbon from supplying the accused wafer carriers.  (Tr. 29-30.)  However, the Court does not view these implications as a reason to vacate or stay the injunction.  Regardless of whether Veeco will be able to show infringement under § 271(f)(2) for the time period prior to the Court's entry of the PI Order (an issue the Court has not yet addressed), Veeco is nonetheless entitled to prospective relief, in the form of a preliminary injunction, to protect against the likelihood of future infringement, for the reasons stated in the PI Order.  Indeed, the alternative approach, pressed by SGL Carbon, would be far more troubling.  If the Court cannot consider its own claim construction in evaluating SGL Carbon's professed good-faith belief of non-infringement, then SGL Carbon would be able to continue supplying the accused products, to the great detriment of Veeco, so long as SGL Carbon's attorneys continue to believe that the Court erred in construing the patent in question.  SGL Carbon does not point to any authority suggesting that the Court should adopt such an approach.  (SGL Br. at 18-19; SGL Reply Br. at 7-8.)

13

## C.    Hardship to Veeco

On the other side of the balance of hardships, the Court finds that Veeco would suffer great hardship if the Court wrongly stays the preliminary injunction.  Veeco's hardship would take the forms described in the Court's PI Order, which need not be reiterated here.  (PI Order at 73-75.) Further, as explained in the PI Order, the hardship that would befall Veeco if this Court wrongly denied its motion for a preliminary injunction (or wrongly granted SGL Carbon's motion for a stay of the injunction) substantially outweighs the hardship to SGL Carbon in this context.

## D.    Public Interest

The public interest in granting or denying SGL Carbon's stay motion is the same as the public interest in granting or denying Veeco's motion for a preliminary injunction.  As explained in the PI Order, the public interest favors the protection of Veeco's patent rights here.  (PI Order at 75.)

*        *        *        *        *

Based on the foregoing factors, the Court finds that SGL Carbon has not demonstrated good cause to stay the preliminary injunction pending SGL Carbon's appeal to the Federal Circuit.

## II.    SGL Carbon's Request for a Security Bond

As a fallback argument, SGL Carbon asked the Court to order Veeco to post a security bond of $32 million pursuant to Federal Rule of Civil Procedure 65(c).  SGL Carbon also asked the Court to stay the preliminary injunction until Veeco posted the required security.

Federal Rule of Civil Procedure 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Second Circuit has issued conflicting decisions on whether a district court must in all cases determine the propriety of a security bond before issuing a preliminary injunction.  In *Clarkson Co. v. Shaheen*, a unanimous three-judge panel of

14

the Second Circuit held that a district court could "dispense with the filing of a bond" when "no request for a bond was ever made in the district court."  544 F.2d 624, 632 (2d Cir. 1976).  In *Corning Inc. v. PicVue Elecs., Ltd.*, a two-judge panel of the Second Circuit issued a *per curiam* opinion holding that, although a district could has the discretion "to decide that, under the circumstances, no security was required, . . . the district court was required to make this determination before it entered the preliminary injunction."  365 F.3d 156, 158 (2d Cir. 2004).  The Second Circuit has acknowledged this conflict but has not resolved it.  *Eyewonder, Inc. v. Abraham*, 293 F. App'x 818, 821 (2d Cir. 2008) ("[W]e need not definitively resolve this issue.").

Given this conflict, the Court views the Second Circuit's earlier decision in *Clarkson* as the governing authority.  Under well settled Second Circuit practice, "a three-judge panel is bound by a prior panel's decision until it is overruled either by [the Second Circuit] sitting *en banc* or by the Supreme Court."  *Doscher v. Sea Port Group Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016).  The only two exceptions to this rule are (i) the "mini-*en banc*" process, "in which the panel circulates its opinion among all active judges and receives no objections to its filing," or (ii) "where an intervening Supreme Court decision casts doubt on the prior ruling."  *Id.* (quoting first *Shipping Corp. of India Ltd. v. Jaldhi*, 585 F.3d 58, 67 & n.9 (2d Cir. 2009), and second *Finkel v. Stratton Corp.*, 962 F.2d 169, 174-75 (2d Cir. 1992)).  The two-judge *per curiam* decision in *Corning* does not qualify under any of these exceptions.  It did not identify a Supreme Court precedent that cast doubt on *Clarkson* or indicate that a "mini *en banc*" process had occurred.  Indeed, the *Corning* decision did not cite the *Clarkson* decision at all.  365 F.3d at 158.  As such, the Court finds that it has the authority under *Clarkson* to issue the PI Order without requiring or explicitly addressing

the need for a security bond, because SGL Carbon did not request a bond at the time that the Court was considering Veeco's PI motion.  544 F.2d at 632.

However, in response to SGL Carbon's request for a security bond as part of its stay motion, the Court ordered expedited briefing of SGL Carbon's stay motion and held a show cause hearing on November 14, 2017, to hear argument on SGL Carbon's motion and determine the appropriate amount of security, if any, for the preliminary injunction.  During the hearing, based on evidence of anticipated lost profits submitted by SGL Carbon, the Court ordered Veeco to post a security bond of $7.5 million within a week.  Veeco posted the requisite security the next day. (Dkt. 76.)[9]  In light of Veeco's timely transmittal of the required security bond, the Court finds it proper for the preliminary injunction to have remained in effect continuously since it was issued on November 2, 2017.  *See Clarkson*, 544 F.2d at 632; *see also Scarsdale Cent. Serv., Inc. v. Cumberland Farms, Inc.*, No. 13-cv-8730, 2014 WL 2870283, at *6 (S.D.N.Y. June 24, 2014) (reconsidering preliminary injunction order solely to make bond determination without staying injunction); *WPIX, Inc. v. ivi, Inc.*, No. 10-cv-7415, 2011 WL 1533175, at *4 (S.D.N.Y. Apr. 19, 2011) (denying motion to stay preliminary injunction, but amending preliminary injunction order to require a $10,000 bond in light of the Second Circuit's conflicting decisions in *Clarkson* and *Corning*); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275 (2d Cir. 2012) (affirming preliminary injunction that was issued initially without bond requirement).

## CONCLUSION

For the reasons stated above and in the Court's PI Order, the Court denies SGL Carbon's motion to stay the November 2, 2017 preliminary injunction pending appeal.

---

[9] The Court also invited the parties to submit a motion or motions to amend the amount of the security bond—either upward or downward—after additional discovery has been taken concerning the financial implications of the preliminary injunction for SGL Carbon.

SO ORDERED.


/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  December 26, 2017
        Brooklyn, New York